# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ARTHUR LEWIS                                    CIVIL ACTION

VERSUS                                          NO.  11-1880

BURL CAIN, WARDEN                               SECTION "A"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. STATE COURT PROCEDURAL BACKGROUND

The petitioner, Arthur Lewis, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Lewis and a co-defendant, Zenophon Fleury, were indicted on December 21, 1989 by a grand jury in Orleans Parish with the first degree murder of William Allison.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On November 7, 1989, shortly before 9:00 p.m., four tourists in the City, William Allison, Jane Johnston, and Jefferson and Bessie Ratcliffe were returning to their French Quarter hotel from a restaurant on Decatur Street. While walking in the 600 block of Ursuline Street, Ms. Johnston and Mrs. Ratcliffe were in front and the two men were eight to twelve feet behind. A blue and white Chevrolet Nova stopped in the middle of the street and two young black men got out and approached Mr. Allison and Mr. Ratcliffe.
>
> One of the young men had a gun, and his companion demanded that Mr. Allison and Mr. Ratcliffe hand over their wallets. Mr. Ratcliffe ran over to his wife to protect her, and he heard Mr. Allison tell the robbers that he would not give them his wallet. The unarmed robber then repeatedly told his companion to shoot and the other robber shot Mr. Allison three times. The unarmed robber went over to the others and demanded their money which they gave him. Mr. Allison rose and said that he was not going to let the robbers get away with what they had done and the armed man shot Mr. Allison two more times. As the two robbers got back into their car and drove away, Mr. Ratcliffe pulled a fifty dollar bill out of his pocket and wrote on it what he believed to be the license plate number of the car.
>
> Within three minutes the police arrived, but Mr. Allison was dead. He had been shot five times with a .38 caliber gun. An unidentified bystander gave one of the officers a slip of paper on which he had written the license plate number of the car. The number was 223N960. A check of the records showed that the car belonged to David Scott.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 12, Indictment, 12/21/89.

Scott told the police that he had given his car to Fleury in exchange for crack cocaine the day before. Scott showed the police where Fleury's girlfriend lived at 2024 North Prieur Street. She was Acquanetta Lewis, the younger sister of Arthur Lewis, the defendant.

Mr. Ratcliffe described the man who shot Mr. Allison as a light-skinned black, who was clean-shaven, between the ages of eighteen and twenty.

On November 8th, Detective Herman Cade found identification cards and photographs belonging to Mr. Ratcliffe in the 2100 block of North Prieur, across the street from Lewis' home. Lewis was arrested later that day. Seven days later Mr. Ratcliffe selected Lewis' picture from a photographic lineup as the man who robbed him and shot William Allison.

At trial, "Nugie" and "Terry," both testified that on the evening of November 7 they rode around in Scott's car with Fleury doing to the driving. "Nugie" testified that he saw Fleury give Lewis a .38 caliber gun which was chrome with a wooden handle. "Terry" also saw Lewis with the gun.

Fleury testified that in exchange for testifying he had pled guilty to manslaughter and three counts of armed robbery and would not receive a sentence in excess of forty years. Fleury stated that on the evening of the murder he went to Lewis' home while "Terry" and "Nugie" took the car for a short while. "Terry" brought the car back; and Fleury and several others, including Lewis, began driving around. Fleury testified that after he dropped off the others, he, Lewis, and another man robbed an elderly man of $9.00 near the K&B Drug Store at Frenchmen and Derbigny Streets. After dividing the proceeds of the robbery, he and Lewis dropped off the other robber at a gas station at Claiborne and Elysian Fields Avenues. He and Lewis then decided to rob someone in the French Quarter and after driving around for a short while, they drove up Ursuline and saw the four tourists. Fleury got out of the car and walked up to the man and woman in front while Lewis approached the other couple. The man hit him in the mouth and he, Fleury, shouted "shoot the man." Lewis did not shoot the man until the man moved toward Lewis. Fleury then took the other wallets and a purse and he and Lewis headed for the car. The man who had been shot started to come after them and Lewis shot the man again. He and Lewis drove to Lewis' house on North Prieur where they divided up the money. Fleury said that he threw away the wallets and the purse in a garbage can by a school near Lewis' house. Fleury admitted to being a crack cocaine dealer; he denied giving a gun to Lewis on the night of the murder.

Lewis testified that he was at the home of Ulo Jimerson, his girlfriend, on the evening of November 7th. He stated that he arrived there at approximately 8:00 p.m. and did not leave until sometime between 10:00 p.m. and 11:00 p.m. Ulo Jimerson, her mother, and her younger sister all testified that Lewis was at their home but gave inconsistent testimony as to the time.

State v. Lewis, 612 So.2d 213, 214-15 (La. App. 4th Cir. 1992); State Record Volume 9 of 12, Louisiana Fourth Circuit Court of Appeal Opinion, 90-KA-1683, pages 2-4, December 29, 1992.

Fleury entered a guilty plea to manslaughter on May 18, 1990, in exchange for his testimony against Lewis.[4]  Lewis was tried before a jury on May 22 through 25, 1990, and was found guilty as charged of first degree murder.[5]  The jury recommended that he be sentenced to life imprisonment.[6]

On May 29, 1990, the state trial court sentenced Fleury in accordance with his plea agreement to serve 21 years in prison without benefit of parole, probation or suspension of sentence.[7]  The court sentenced Lewis on June 19, 1990, to life imprisonment without benefit of parole, probation, suspension of sentence.[8]

---

[4]St. Rec. Vol. 1 of 12, Minute Entry, 5/18/90; St. Rec. Vol. 2 of 12, Waiver of Constitutional Rights Plea of Guilty, 5/18/90.

[5]St. Rec. Vol. 1 of 12, Trial Minutes (2 pages), 5/22/90; Trial Minutes (page 1of 4), 5/23/90; Trial Minutes (pages 2-4), 5/23/90; Trial Minutes (four pages), 5/24/90; Trial Minutes (four pages), 5/25/90; St. Rec. Vol. 3 of 12, Jury Verdict, 5/25/90; St. Rec. Vol. 8 of 12, Trial Transcript, 5/23/90; St. Rec. Vol. 9 of 12, Trial Transcript (pages 210-225), 5/23/90; Trial Transcript, 5/24/90.

[6]St. Rec. Vol. 1 of 12, Trial Minutes (page 4), 5/25/90; St. Rec. Vol. 3 of 12, Jury's Sentencing Recommendation, 5/25/90.

[7]St. Rec. Vol. 4 of 12, Sentencing Decree (Fleury), 5/29/90.

[8]St. Rec. Vol. 1 of 12, Sentencing Minutes, 6/19/90; St. Rec. Vol. 3 of 12, Sentencing Decree, 6/19/90.

On direct appeal, Lewis's counsel asserted two errors:[9] (1) The state trial court erred in denying the motion to suppress Mr. Ratcliffe's identification. (2) The evidence was insufficient to support the verdict. On December 29, 1992, the Louisiana Fourth Circuit affirmed the conviction and sentence, finding no merit in the appeal issues.[10]

Lewis's conviction became final 30 days later, on January 28, 1993, because he did not seek rehearing or file for review in the Louisiana Supreme Court. Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5the Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

Almost three years later, on November 1, 1995, Lewis submitted to the state trial court an application for post-conviction relief in which he asserted two grounds for relief:[11] (1) The evidence was insufficient to support the verdict. (2) He received ineffective assistance of counsel because counsel failed to file a motion to suppress the warrantless arrest without probable cause. On November 15, 1995, the state trial court

---

[9]St. Rec. Vol. 9 of 12, Appeal Brief, 90-KA-1683, 6/26/92.

[10]State v. Lewis, 612 So.2d at 213; St. Rec. Vol. 9 of 12, 4th Cir. Opinion, 90-KA-1683, 12/29/92.

[11]St. Rec. Vol. 2 of 12, Uniform Application for Post-Conviction Relief, 11/15/95 (dated 11/1/95); St. Rec. Vol. 1 of 12, Docket Entry, 11/15/95.

denied relief and specifically found no merit in the ineffective assistance of counsel claim.[12]

Six months later, on May 9, 1996, Lewis submitted an untimely[13] writ application to the Louisiana Fourth Circuit seeking review of the trial court's order.[14]  The court denied the application on July 23, 1996, finding no error in the trial court's ruling.[15]  The Louisiana Supreme Court also denied without reasons Lewis's subsequent writ application to that court on August 27, 1997.[16]

Three years later, on September 1, 2000, Lewis submitted a motion for new trial and to reconsider the sentence.[17]  The state trial court denied the motion.  The record does not reflect that he sought further review of that order.

---

[12]St. Rec. Vol. 2 of 12, Judgment on Application for Post-Conviction Relief, 11/15/95; St. Rec. Vol. 1 of 12, Minute Entry, 11/15/95; Docket Entry, 11/15/95.

[13]Petitioner had 30 days from issuance of the trial court's order to file for review in the Louisiana Fourth Circuit.  La. App. Rule 4-3.

[14]St. Rec. Vol. 10 of 12, 4th Cir. Writ Application, 96-K-1104, 5/16/96 (dated 5/9/06).

[15]St. Rec. Vol. 10 of 12, 4th Cir. Order, 96-K-1104, 7/23/96.

[16]St. Rec. Vol. 10 of 12, La. S. Ct. Order, 96-KH-2108, 8/27/97; La. S. Ct. Writ Application, 96-KH-2108, 8/16/96 (dated 8/13/96); St. Rec. Vol. 2 of 12, La. S. Ct. Letter, 96-KH-2108, 8/16/96.

[17]The record does not contain a copy of this motion and it is not referenced by Lewis or the State in their respective pleadings.  St. Rec. Vol. 1 of 12, Minute Entry, 9/1/00; but see, Docket Entry, 11/1/00.

On October 23, 2003, Lewis filed an application for writ of mandamus in the Louisiana Fourth Circuit.[18] The application was denied by the court on December 2, 2003, because his underlying claims were meritless.[19]

On June 22, 2004, Lewis's retained counsel filed another application for post-conviction relief asserting the following grounds for relief:[20] (1) Louisiana's system for selecting grand jury members is unconstitutional. (2) La. Code Crim. P. art. 413(C) is an unauthorized local law. (3) Deloch v. Whitley cannot withstand judicial review as a procedural bar. (4) Petitioner was denied effective assistance of counsel when counsel failed to request a pre-sentence investigation and did not file a motion to quash. (5) Petitioner's constitutional rights were violated by an erroneous reasonable doubt jury instruction. (6) The conviction must be vacated in light of the erroneous reasonable doubt jury instruction. (7) Petitioner's claims are cognizable under La. Code Crim. P. art. 930.8(A)(2), because the jury instruction claim was not previously raised, and the grand jury claims are based on a new, retroactive rule of constitutional law.

---

[18]This writ application is not part of the record provided to this court. It is not mentioned in the pleadings from Lewis or the State. The date of filing was obtained from the records of the Clerk of Court of the Louisiana Fourth Circuit.

[19]St. Rec. Vol. 2 of 12, 4th Cir. Order, 2003-K-1865, 12/2/03.

[20]St. Rec. Vol. 1 of 12, Minute Entry, 6/22/04; St. Rec. Vol. 3 of 12, Application for Post-Conviction Relief, 6/22/04; see also, Application to Correct Illegal Sentence, dated 5/27/04.

The state trial court denied the application in open court on January 28, 2005.[21] Lewis did not seek further review of this ruling.

On June 25, 2007, Lewis submitted another application for post-conviction relief to the state trial court alleging that the State withheld favorable evidence of prior witness statements identifying Fleury as the shooter. Although the record does not contain a file-stamped copy of this application, according to Lewis's verified state court pleading later filed with the Louisiana Supreme Court, the application for post-conviction relief was mailed by him on June 25, 2007 to the state trial court and received by the clerk of that court on July 9, 2007.[22] He also submitted copies of the application, signed and dated June 25, 2007, to both the Louisiana Fourth Circuit and the Louisiana Supreme Court, with the certified mail receipt addressed to the clerk of court and signed on July 9, 2007.[23] Lewis references this same application in his petition to this court, and the State

_____

[21]St. Rec. Vol. 1 of 12, Minute Entry, 1/28/05.

[22]St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 09-KH-1133, p.2, 5/22/09 (signed verification on the writ application filing sheet dated 5/14/09).

[23]St. Rec. Vol. 11 of 12, Copy of Application for Post-Conviction Relief, dated 6/25/07; Mail Receipt, 7/9/07; see also, St. Rec. Vol. 3 of 12, Motion for Leave to File Supplemental Brief, p. 2, 2/19/10.

acknowledges its submission in its opposition response.[24] The Louisiana Supreme Court also deemed it to have been filed by certified mail on July 9, 2007.[25]

Almost seventeen months later, on January 18, 2009, Lewis filed an application for writ of mandamus with the Louisiana Fourth Circuit seeking an order directing the trial court to rule on his June 25, 2007, writ application.[26] The court denied the application because the trial court's docket master did not show that a post-conviction application had been filed and Lewis had not attached a copy of his application.[27]

Lewis submitted another application for writ of mandamus to the Louisiana Fourth Circuit on March 23, 2009, with a copy of his post-conviction application dated June 25, 2007, and a certified mail receipt signed at the clerk of court's office on July 9, 2007.[28] The court denied the application on April 24, 2009, after review of his post-conviction claims, finding no entitlement to relief.[29]

---

[24]Rec. Doc. No. 1, p.22; Rec. Doc. No. 11, p. 4.

[25]State ex rel. Lewis v. State, 9 So.3d 860 (La. 2009); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2009-KH-1133, 6/5/09.

[26]St. Rec. Vol. 11 of 12, 4th Cir. Writ Application, 2009-K-0097, dated 1/18/09.

[27]St. Rec. Vol. 11 of 12, 4th Cir. Order, 2009-K-0097, 3/9/09.

[28]St. Rec. Vol. 11 of 12, 4th Cir. Writ Application, 2009-K-0357, 3/23/09 (dated 3/18/09).

[29]St. Rec. Vol. 11 of 12, 4th Cir. Order, 2009-K-0357, 4/24/09.

Lewis sought review of this order in the Louisiana Supreme Court on May 14, 2009.[30] The supreme court transferred the application to the state trial court on June 5, 2009, with instructions for the district court judge to act on the application deemed filed by certified mail on July 9, 2007.[31] The state trial court eventually denied the application on March 3, 2010.[32]

On April 23, 2010, Lewis submitted an untimely writ application to the Louisiana Fourth Circuit seeking review of the trial court's ruling.[33] The court denied the application on May 10, 2010, finding no error in the trial court's ruling.[34] The Louisiana

---

[30]St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 09-KH-1133, 5/22/09 (postmarked 5/14/09, dated 5/14/09).

[31]State ex rel. Lewis v. State, 9 So.3d 860 (La. 2009); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2009-KH-1133, 6/5/09.

[32]St. Rec. Vol. 1 of 12, Minute Entry, 3/3/10. Shortly thereafter, on April 9, 2010, the Louisiana Supreme Court also denied as moot Lewis's motion to enforce its order to compel the state trial court to rule. State ex rel. Lewis v. State, 31 So.3d 363 (La. 2010); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2009-KH-1133, 4/5/10; Motion to Enforce, 10/7/09.

[33]St. Rec. Vol. 12 of 12, 4th Cir. Writ Application, 2010-K-0640, 4/30/10 (dated 4/23/10).

[34]St. Rec. Vol. 12 of 12, 4th Cir. Order, 2010-K-0640, 5/10/10. Lewis had tow other writ applications in the Louisiana Fourth Circuit, Nos. 2010-K-0750 and 2010-K-1291, which were related to his efforts to obtain a non-existent transcript from the trial court, and they are not relevant to this court's timeliness review. St. Rec. Vol. 12 of 12, 4th Cir. Writ Application, 2010-K-0750, 5/25/10 (dated 4/29/10); 4th Cir. Order, 2010-K-0750, 6/29/10; 4th Cir. Writ Application, 2010-K-1291, 9/14/10 (dated 8/27/10); 4th Cir. Order, 2010-K-1291, 9/27/10.

Supreme Court also denied his related writ application on May 27, 2011, without stated reasons.[35]

## II.    FEDERAL HABEAS PETITION

On August 4, 2011, the clerk of this court filed Lewis's petition for federal habeas corpus relief in which he alleges that the State withheld prior favorable witness statements that identified Fleury as the shooter.[36] The State filed a response in opposition to Lewis's petition, arguing that his petition was not timely filed under the AEDPA, even applying the one-year grace period after passage of the AEDPA in 1996, and Lewis is not entitled to equitable tolling.[37]

Lewis filed a traverse to the State's opposition, arguing that his petition should be considered timely if his AEDPA filing period is considered to have begun on July 21, 2006, when he claims to have discovered the withheld evidence from the State.

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[35]State ex rel. Lewis v. State, 63 So.3d 994 (La. 2011); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2010-KH-1233, 5/27/11; La. S. Ct. Writ Application, 10-KH-1233, 5/28/10 (dated 5/20/10).

[36]Rec. Doc. No. 1.

[37]Rec. Doc. No. 11.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[38] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Lewis's petition, which, for reasons discussed below, is deemed filed in this federal court on July 13, 2011.[39]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[38]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[39]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert.</u> <u>denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Lewis's petition was filed by the clerk of this court on August 4, 2011, when the filing fee was paid. Lewis's signature on his petition was dated July 13, 2011. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. <u>See</u> <u>Cousin</u>, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

The State correctly argues and I find that Lewis's petition was not timely filed in this court and should be dismissed for that reason.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[40]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  Lewis's conviction was final on January 28, 1993, when he did not pursue further review of his sentence or conviction.  See Cousin, 310 F.3d at 845.  This was before the AEDPA effective date of April 24, 1996.

The United States Court of Appeals for the Fifth Circuit has held that a petitioner has a one-year grace period from that effective date, or until April 24, 1997, to file his

_____

[40]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here; I will discuss Lewis's claim regarding an alternative trigger later in this opinion:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

13

federal habeas petition or benefit from the tolling provisions allowed by the AEDPA and related case law. See Flanagan, 154 F.3d at 200 (defining the grace period); United States v. Flores, 135 F.3d 1000, 1004 (5th Cir. 1998), cert. denied, 525 U.S. 1091 (1999) (defining the grace period); 28 U.S.C. § 2244(d)(2) (defining statutory tolling); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (addressing equitable tolling). The court in "Flores concluded that habeas petitioners must be afforded a reasonable time after AEDPA's effective date for the filing of petitions for collateral relief based upon claims that would otherwise be time-barred before AEDPA's April 24, 1996 effective date." Flanagan, 154 F.3d at 200 (citing Flores, 135 F.3d at 1004-05). "[P]etitioners . . . whose claims would otherwise be time-barred prior to the April 24, 1996 effective date of AEDPA, now have one year after the April 24, 1996 effective date of AEDPA in which to file a § 2254 petition for collateral relief." Id. (citing Flores, 135 F.3d at 1005).

Because Lewis's conviction became final before AEDPA's effective date, he was required to file the instant federal habeas petition no later than April 24, 1997. Lewis submitted his federal petition on July 13, 2011, more than 14 years after the grace period expired, and it must be dismissed as untimely, unless the one-year statute of limitations grace period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or was prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Lewis has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when

defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies, like those filed by this petitioner, are not other collateral review for purposes of the tolling calculation. <u>Osborne v. Boone</u>, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other

collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA limitations period began to run in Lewis's case on April 25, 1996, the day after the AEDPA was made effective. The limitations period ran uninterrupted for 14 days, until May 9, 1996, when he filed an untimely writ application in the Louisiana Fourth Circuit seeking review of his earlier application for post-conviction relief. The filing period remained tolled through August 27, 1997, when the Louisiana Supreme Court denied his related writ application.

The period began to run again on August 28, 1997 and did so for the remaining 351 days, until August 13, 1998, when it expired. Lewis had no properly filed state post-conviction or other collateral review proceedings pending during that time period. In addition to this one-year period of time, Lewis allowed another 2,783 days, or more than seven years, to lapse without any properly filed state post-conviction or other collateral review proceedings pending before he submitted his federal habeas petition. Included

19

in this time gap are periods of 749 days between expiration of the grace period and submission of his post-conviction motion for new trial on September 1, 2000, and another 1,156-day lapse between resolution of that motion and his counsel's filing of the next application for post-conviction application on June 22, 2004. He allowed another 878 days to pass between conclusion of that application for post-conviction relief and submission of his third application on June 25, 2007.

The record establishes that, after his conviction became final and the AEDPA grace period lapsed, Lewis allowed substantially more than one year to lapse without any properly filed and pending state court proceedings and without having filed a timely federal habeas petition. His federal habeas corpus petition is clearly time-barred and must be dismissed for that reason.

Lewis argues in his traverse to the State's response that he is entitled to consideration of an alternative trigger for the filing of his habeas corpus petition. As discussed above, other than conviction finality, the AEDPA also allows for the filing of a federal petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Throughout his state court and federal habeas pleadings, Lewis consistently asserts that he did not receive the documents which disclosed the basis of his alleged withheld

evidence claim until July 21, 2006. This is the date on which he claims to have received the documents from his state post-conviction counsel, who represented him in the 2004 application for post-conviction relief. He also consistently argued to the state courts that on June 25, 2007, he submitted his withheld evidence claim in a post-conviction application which was received by the clerk of the Orleans Parish Criminal District Court on July 9, 2007.

The fact that this information was in the possession of Lewis's counsel, who represented him three years earlier in 2004, undermines any finding of due diligence by Lewis in discovering the basis for the claim of alleged withheld evidence. Nevertheless, assuming all of these dates to be correct, Lewis's petition is still not filed timely in this federal court.

Accepting July 21, 2006, as the date he discovered the new factual predicate, he would have had until Saturday, July 21, 2007, or the next business day, to file his federal habeas petition, which he did not do. As discussed above, under the AEDPA, this filing period would have been tolled by any properly filed state post-conviction or other collateral review proceeding. Under this alternative scenario, Lewis's filing period would have begun to run on July 22, 2006 and would have done so for 338 days, until June 25, 2007, when he signed and submitted his next application for post-conviction relief to the state trial court. That application remained pending, and the limitations

period remained tolled, until May 27, 2011, when the Louisiana Supreme Court denied his related writ application.

At that time, Lewis had only 27 days remaining to file his federal petition, which he did not do. This alternative one-year period expired on June 23, 2011. Lewis did not sign and submit his federal petition to this court until July 13, 2011, which was 20 days <u>after</u> this alternative filing period expired.

I also find that Lewis has failed to prove that he submitted his last state application for post-conviction review on any date before June 25, 2007. Lewis suggests for the first time in his traverse to the State's response that he mailed his 2007 application for post-conviction relief to the state trial court on January 3, 2007. This assertion is wholly unsupported by any believable evidence and is contradicted by the record. Lewis consistently reported to the state courts that he mailed his application on June 25, 2007 to the clerk of the state trial court and it was received by the clerk on July 9, 2007. The copies of the application for post-conviction relief submitted to the state appellate courts as part of his mandamus pursuit and substantive review are dated June 25, 2007.[41] He also relied upon this submission date, June 25, 2007, in the writ applications filed in the Louisiana Fourth Circuit and the Louisiana Supreme Court.[42] Lewis made clear to the

---

[41]St. Rec. Vol. 11 of 12, Copy of Application for Post-Conviction Relief, dated 6/25/07.

[42]St. Rec. Vol. 11 of 12, 4th Cir. Writ Application, 2009-K-0097, p. 1 (dated 1/18/09); La. S. Ct. Writ Application, 09-KH-1133, p.2, 5/22/09 (dated 5/14/09).

state courts that his application was submitted to the state trial court on June 25, 2007. He never before suggested any other date.

Lewis provided the state courts with multiple copies of the certified mail receipt addressed to and signed by the "Criminal District Court Clerk of Courts Office."[43] Lewis now submits for the first time in this court two purported requests for indigent mail, which he claims support the mailing date of January 3, 2007. Neither of these new requests for indigent mail are addressed to the "Criminal District Court Clerk of Courts Office" as appears on the certified mail receipt. One is addressed to "Eddie Jordan District Attorney" and the other is addressed "Honorable Ben Willard 'Division C'."[44]

The newly offered indigent mail requests do not match any of the information Lewis relied upon so heavily in seeking his state court review. He has failed to establish that his last state application for post-conviction relief was submitted for filing or mailed before June 25, 2007. His new claims to the contrary are rejected.

The foregoing calculations, under both the one-year grace period and the alternative trigger from alleged discovery of the factual predicate, demonstrate that Lewis's petition was not timely filed in this court on July 13, 2011. Under either calculation, the record establishes that Lewis allowed more than one year to lapse without any properly filed and pending state court proceedings and without having filed a timely

---

[43]St. Rec. Vol. 11 of 12, Mail Receipt, 7/9/07; Rec. Doc. No. 12-1, p.4.

[44]Rec. Doc. No. 12-1, pp. 1-3.

federal habeas petition. His federal habeas corpus petition is time-barred and must be dismissed for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Arthur Lewis for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[45]

New Orleans, Louisiana, this ____13th____ day of February, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[45]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.